548

## City of Philadelphia, to use, v. Brady.

*Duane, Morris & Heckscher*, for plaintiff;  *Joseph R. Embery*, for defendant.

GORDON, JR., J., April 20, 1931.—The three cases now before us upon rules for new trials are proceedings in scire facias upon municipal liens for sewer construction. The cases were tried together, and the only reasons advanced in support of the rules which require discussion are the second, third and thirteenth. The second and third reasons relate to the refusal of the trial judge to admit in evidence the tax assessment book of the city, in which the defendant's property is assessed for purposes of taxation as rural property. The thirteenth reason is that the verdict was excessive.

The city's right to recover under the lien depends upon whether the land is urban or rural, and all the evidence presented centered around that question. The trial judge refused to permit proof that the tax assessors of the district had assessed the property as rural. We see no error in this ruling. In Philadelphia, to use, *v.* Gowen, 202 Pa. 453, which was a proceeding upon a municipal claim, the city offered the tax books in evidence, and the court admitted them, to show that the property was assessed for taxation as urban property. The Supreme Court held the admission of the books to be error, stating, through Mr. Justice Mitchell, the reason for this decision to be that "The books had none of the qualifications of evidence against the property owner for the purpose offered. While they were official, and made under the sanction of the official oath of the assessors, yet their relevancy and effect are derived entirely from the statute, and are confined to the purpose for which the statute authorizes them, to wit: the valuation of the property for the determination of its proper assessment for taxation. Unless appealed from they are conclusive upon the owner for that purpose and to that extent, but for all other purposes, as against him they are irrelevant ex parte entries not admissible in evidence at all." That case differs from the one before us in that there the assessment was offered by the city against the property owner, while here it is offered by the owner against the city. The reason underlying the decision, however, that the relevancy and effect of the tax books are "derived entirely from the statute and are confined to the purpose for which the statute authorizes them," is as applicable when they are offered by the plaintiff as by the defendant. The only theory upon which their admission

can be sustained when offered against the city is as an admission against interest, because made by the municipality or its agent; and it was upon this theory that the defendant offered the books. That theory, however, is untenable, first, because their relevancy and effect are confined to the purpose of taxation, as stated in the Gowen case, and, second, because the tax assessors are not officers or agents of the municipality and the city has no control over their official acts.

This was definitely held in Girard Trust Co. *v.* Philadelphia, 248 Pa. 179, in which the assessment of a property was offered in evidence against the city by a plaintiff in a land damage case as an admission against interest. There the rejection of the assessment was sustained, the Supreme Court holding: "The answer to the argument that the city made the assessments is to be found in the recent case of Selig *v.* Philadelphia, 232 Pa. 309, where the method of assessing taxes in Philadelphia is elaborately discussed and it is ruled that such taxes are assessed by a 'State Agency' under a system established by the Commonwealth and administered through public officers (see Richie *v.* Philadelphia, 225 Pa. 511, 516) appointed by 'a State Department whose rulings are subject to appeal . . . to the courts of the Commonwealth,' and that the city officials have no jurisdiction in the matter whatever. As to the theory of adoption, we see no merit in the argument that, because the city received taxes based on these assessments and they were used in determining its borrowing capacity, the municipality in effect adopted them as an expression of its own estimate of the value of the plaintiffs' land; for no corporate body can properly be held to have adopted the action of another independent public agency by merely giving such recognition thereto as the law compels it to render." In Selig *v.* Philadelphia, referred to in the foregoing quotation from Mr. Justice Moschzisker, it was said that "By no stretch of the imagination can it be conceived that the city has any power over the assessors or the board of revision on questions affecting the assessment of subjects of taxation in which the state alone is concerned to the exclusion of the city."

These decisions merely elaborate and emphasize the fundamental reason for the ruling in the Gowen case and refute the contention of the defendant that the assessment in this case was evidence against the city as an admission against interest.

The three cases relied on by the defendants, when carefully examined, will be found not to be in conflict with the Gowen decision or with the reasons justifying the action of the trial judge in refusing to admit the tax books in evidence. In the earliest case relied on, Craig *v.* The City, 89 Pa. 265, the relevant part of the opinion dealt with two offers of the defendant, one to prove that the premises were "situated in a rural district in the City of Philadelphia, and that a large part of Market street, from Forty-third to Sixty-third streets, passes through rural and farm property, now used for farm purposes;" and the other, to prove that "all the property fronting on Market street, from Forty-third to Sixty-third, not exempt from taxation, is assessed as such rural property and farm land." The entire discussion of these offers is devoted to a demonstration that it is unconstitutional to assess rural property upon the front-foot rule, and there was none as to the admissibility of the assessment, and the case, as we read it, is merely authority for the proposition that, in a proceeding upon a municipal claim assessed on a front-footage basis, as in the present case, it is a defense to the claim that the property assessed is rural.

In Lukens *v.* City of Philadelphia, to use, 13 W. N. C. 86, the second case relied on by the defendant, the general admissibility of such evidence was not

before the court, for the verdict of the jury in favor of the plaintiff negatived the value of the assessment as evidence and took that question out of the case. The plaintiff, however, had requested the court to charge that the assessment was conclusive evidence of the character of the property, and the court's refusal to so charge was assigned as error on appeal. In a short *per curiam* opinion, the action of the court in refusing to charge as requested was affirmed. That case does not, therefore, control the question before us.

Philadelphia *v.* Gorgas, 180 Pa. 296, the third case strongly relied upon by the defendants, is less in point even than the two already discussed. The point there involved was whether the status of the property as rural or urban should be considered as of the year in which the ordinance directing the paving was passed or that in which the work was done. The admissibility and relevancy of the tax books was not even discussed.

The assessment and classification of property by the real estate assessors being in no sense the act of the municipality or any of its agents, it follows that their determination of the character of the property in suit could not be viewed as an admission against interest by the city. We are of opinion, therefore, that the trial judge did not err in sustaining the plaintiff's objection to the offer of the tax books.

With respect to the thirteenth reason advanced for a new trial, we are of opinion that the verdicts are excessive to the extent of the inclusion in them of a 5 per cent. penalty for nonpayment of the assessments within ninety days from their date. Counsel agreed at the trial upon the amount of the verdict to be rendered in each case, in the event the jury resolved the dispute of fact as to the rural or urban character of the property assessed, in favor of the plaintiff. The court asked counsel to agree upon the amounts of the verdict. This was upon the assumption that there was no dispute in law as to any of the items making up the verdict. It has been discovered since the trial, however, that the Act of May 2, 1925, P. L. 501, under which a five per centum penalty for nonpayment of municipal liens is authorized, has never been followed by an ordinance of councils imposing such a penalty; and the defendant contends that to that extent the verdicts are excessive.

With this contention we agree. The Act of May 2, 1925, is entitled "An act authorizing municipalities to impose a penalty, not exceeding five per centum, on all municipal assessments which are not paid within ninety days from the date of assessment." The enacting section, in like language, provides that municipalities "shall have the right to impose a penalty, not exceeding five per centum, for failure to pay," etc., and that "such penalty shall be added to the assessment and included in the amount for which the municipal lien is filed for such unpaid assessment." It is manifest that this act is not self-executing. It neither imposes the penalty nor fixes the amount of it. It merely confers a right upon the municipality to do so. This the city can do only by municipal legislation, in a general ordinance, which would apply equally to all. Such a power is legislative in character and cannot be delegated to the caprice of occasional official judgment, for there would be no certainty either of regularity or uniformity in the application of the penalty. The mere fact that, since the Act of 1925 was passed, it has been customary to exact the penalty, notwithstanding the absence of an ordinance authorizing and imposing it, is no justification for permitting it to be imposed now that the question has been raised. To the extent of the penalty, therefore, the verdicts are excessive.

The conclusion that we have reached that the verdicts are excessive, however, does not require the granting of a new trial. The figures are not, and

cannot be, disputed. As to them, there is nothing which requires determination by a jury. We, therefore, have the power to mould the verdicts in the light of the law applicable to the various items of which they are composed without sending the cases back for a new trial. We, therefore, reduce the amounts of the verdicts in each case as follows: In case No. 1693, from $1156.56 to $1107.56, the amount of the penalty being $49; in case No. 1689, from $596.23 to $570.98, the penalty being $25.25; and in case No. 1700, from $596.23 to $570.98, the penalty being $25.25.

The verdicts being so reduced, the rules for a new trial in each case are discharged.